**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ARNOLD PAIGE, | ) | |
| | ) | CASE NO. 1:05cv02618 |
| Petitioner, | ) | |
| | ) | JUDGE GWIN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| MARGARET BRADSHAW, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

Petitioner, Arnold Paige, ("Paige"), challenges the constitutionality of his conviction in the case of *State v. Paige*, Case No. CR 445036.  Paige, *pro se*, filed a Petition for Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on November 8, 2005 with the United States District Court for the Northern District of Ohio.  Respondent filed a Return of Writ (Doc. No. 8.) on March 1, 2006.  This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For the reasons set forth below, the Magistrate Judge recommends that the habeas petition (Doc. No. 1) be DENIED.

## I.  Procedural History

### A.  Conviction

In the September 2003 term, the Cuyahoga County Grand Jury returned an indictment charging Paige with the following counts: fifteen (15) counts of rape with specifications, sixteen (16) counts of  kidnaping with specifications, twenty-four (24) counts of unlawful sexual activity with a minor, and one (1) count of gross sexual imposition with a specification.

Paige pled not guilty to the indictment, and the case was tried by a jury.  The trial court

admitted evidence of prior uncharged sexual misconduct.  The jury found Paige guilty on all

counts.  On March 30, 2004, the trial court sentenced Paige to an aggregate term of life

imprisonment with no possibility of parole.

**B.  Direct Appeal**

Paige, represented by counsel, timely appealed his conviction to the Eighth District Court

of Appeals for Cuyahoga County, Ohio, raising the following two assignments of error:

> First Assignment of Error:  The trial court erred by allowing irrelevant and unfairly
> prejudicial other acts testimony to be introduced to the jury.

> Second Assignment of Error:  The appellant was denied effective assistance of counsel
> due to trial counsel's failure to properly introduce exculpatory medical reports and his
> failure to properly adduce testimony from an important defense witness.

On January 3, 2005, the Ohio Court of Appeals issued an opinion affirming the judgment

of the trial court.  (Doc. No. 8-11.)

On February 28, 2005, Paige filed a notice of appeal and a motion for delayed appeal in

the Supreme Court of Ohio.  The Supreme Court of Ohio granted the motion for delayed appeal.

Represented by counsel, Paige filed a memorandum in support of jurisdiction presenting the

following proposition of law:

> In this child sexual abuse case, the trial court committed reversible error and
> deprived Appellant of his rights to due process and a fair trial as guaranteed by
> the Ohio Constitution, Art. 1, § 10, and the Fourteenth Amendment to the U.S.
> Constitution by permitting the State to introduce graphic and highly inflammatory
> "other acts" testimony from Appellant's two daughters (one of whom was the
> complaining witness's own mother) that, 15 to 27 years earlier, Appellant had
> subjected them to various forms of sexual abuse and given them sexually-
> transmitted diseases.

(Doc. No. 8-12, Ex. 16 at 7.)  On September 7, 2005, the Supreme Court of Ohio denied leave to

appeal and dismissed the appeal as not involving any substantial constitutional question.  (Doc.

2

No. 8-12, Ex. 18.)

## C.  Federal Habeas Petition

On November 5, 2005, Paige, *pro se*, filed a Petition for Writ of Habeas Corpus in this

Court, asserting the following three grounds for relief:

> GROUND ONE:  Petitioner's constitutional rights to due process were violated
> by the trial court allowing other acts testimony.

> GROUND TWO:  Petitioner was denied his constitutional rights to effective
> counsel where counsel neglected to introduce exculpatory evidence.

> GROUND THREE: Petitioner's right to due process and equal protection were
> violated by improper sentencing by the trial court.

## II.  Summary of Facts

Factual determinations by state courts are entitled to a presumption of correctness.

*House v. Bell*, 283 F.3d 37 (6th Cir. 2002).  The Ohio Court of Appeals set forth the following

facts underlying Paige's conviction:

> In 2003, Paige was charged with rape of a child under age thirteen, kidnaping,
> gross sexual imposition, and unlawful sexual conduct with a minor. The matter
> proceeded to a jury trial, where the following evidence was presented.

> Paige is the victim's grandfather. The victim testified that the sexual abuse began
> in 2000 at age eleven, when she fell asleep on the floor at Paige's house.  She
> awoke when she felt Paige's hands moving against her thighs, breasts, and vaginal
> area. The victim testified that after this incident he continued to touch her
> inappropriately and frequently engaged in sexual intercourse with her. She
> testified that in exchange for sex, he would give her gifts or money. The victim
> testified that the abuse lasted until a week before her fifteenth birthday.

> Prior to September 2003, the victim experienced burning and itching in her
> vaginal area. Paige, although not a medical doctor, "examined" the area. The
> victim testified that she once saw her grandfather give her aunt a "vaginal exam,"
> thus she allowed him to examine her. She testified that during the "exam" Paige
> used his fingers to touch her vaginal area.

3

In September 2003, the victim had her annual physical when it was discovered
that she had Trichomonas, a sexually transmitted disease. She told her doctor that
she thought she contracted the disease when her grandfather "examined" her.

Paige denied sexually abusing the victim. He admitted that he "examined" her
vaginal area. His statement to Children and Family Services revealed that he did
not derive any sexual gratification from the "examination." However, he stated
that he did not tell the victim's mother about the "exam" because he "just didn't
think about telling her."

Two of Paige's daughters testified that he sexually abused them when they were
the victim's age and that they contracted a sexually transmitted disease at that
time. Detective James McPike of the Cleveland Police Department testified that
reports similar to the victim's were filed against Paige in 1987.

The jury found Paige guilty of all charges. The trial court sentenced him to life in
prison and found him to be a sexually violent predator.

(Doc. No. 8-11, Ex. 12 at 2-3.)

### III.  Standard of Review

This case is governed by provisions of the Antiterrorism and Effective Death Penalty Act

of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), because Paige filed

his habeas petition after the effective date of AEDPA.  *See Lindh v. Murphy*, 521 U.S. 320,

326-27, 337 (1997).  The relevant provisions of AEDPA state:

An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to any
claim that was adjudicated on the merits in State court proceedings unless the
adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the
Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination
of the facts in light of the evidence presented in the State court
proceeding.

28 U.S.C. § 2254(d) (1996).

4

Clearly established federal law can be determined only by examining the holdings of the United States Supreme Court, as opposed to dicta. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). Nevertheless, an explicit statement by the Supreme Court is not required; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (quoting *Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)). As the plain language of the statute indicates, the inquiry is limited to decisions by the Supreme Court. *Williams*, 529 U.S. at 412. However, a habeas court "[m]ay look to lower courts of appeals' decisions, not as binding precedent, but rather to inform the analysis of Supreme Court holdings to determine whether a legal principle had been clearly established by the Supreme Court." *Foley v. Parker*, No. 04-5746, 2007 WL 845864, at *2 (6th Cir. March 22, 2007) (citing *Hill v. Hofbauer*, 337 F.3d 706, 716 (6th Cir. 2003)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413. A state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* An incorrect state court decision may not be unreasonable under this standard. *Id.* at 410-11. For this reason, a federal habeas court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or

5

incorrectly." *Id.* at 411.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, No. 03-2113, 2006 WL 68438, at *4 (6th Cir. Jan.10, 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998) ("[AEDPA] tells federal courts:  Hands off, unless the judgment in place is based on an error grave enough to be called unreasonable."))  The "unreasonable" requirement is a high bar.  *Ruimveld*, 404 F.3d at 1010.

## IV.  Analysis

### A.  Procedurally Defaulted Claims: Grounds Two and Three

Respondent asserts that Paige has procedurally defaulted Grounds Two and Three of the Petition.  Procedural default occurs when a petitioner fails to present his federal constitutional claim to the state courts in the manner required by state procedural law, and the state courts impose the procedural bar of refusing to review the merits of the alleged error.  A federal habeas court is barred from hearing issues that could have been raised in the state courts, but were not, and now may not be presented to the state courts due to procedural default or waiver.  *Wainright v. Sykes*, 433 U.S. 72 (1977).  Failure to fairly present the federal claim to the state courts, especially if the petitioner is barred from returning to state court with it, waives the claim for purposes of federal habeas corpus review.  *Gray v. Netherland*, 518 U.S. 152, 162 (1996).

However, the procedural default may be excused if the petitioner shows cause for the procedural default and prejudice from the alleged error.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  The Sixth Circuit's *Maupin* decision sets out four inquiries that a district court should make when the state argues that a habeas claim has been defaulted by a petitioner's

failure to observe a state procedural rule.  First, the court must determine whether there is such a procedural rule that is applicable to the claim at issue and whether the petitioner did, in fact, fail to follow it.  *Id.* at 138.  Second, the court must decide whether the state court actually enforced the procedural sanction.  *Id.*  Third, the court must decide whether the state's procedural forfeiture is an "adequate and independent" ground on which the state can rely to foreclose review of a federal constitutional claim.  Such a rule is adequate if it is regularly or consistently applied by the state court, *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988), and is independent if it does not depend on a federal constitutional ruling.  *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985).  And fourth, if the first three steps are satisfied, the petitioner must demonstrate, consistent with *Wainwright v. Sykes*, 433 U.S. 72 (1977), that there was "cause" for him to neglect the procedural rule and that he was actually prejudiced by the alleged constitutional error, or that failure to review the petitioner's claims will result in a fundamental miscarriage of justice.  *See also Coleman*, 501 U.S. at 750 ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice").

### 1. Ground Two: Ineffective Assistance of Counsel

Although Paige raised this claim to the Ohio Court of Appeals, he procedurally defaulted it when he failed to include it in his memorandum of jurisdiction to the Supreme Court of Ohio after he was granted leave to file a delayed appeal.  The claim would be barred under Ohio's *res judicata* doctrine.  The doctrine of *res judicata* applies to constitutional claims that could have

7

been raised in a direct appeal, as well as to constitutional claims that could have been raised in any post conviction proceeding.  *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998) (citing *State v. Combs*, 652 N.E.2d 205, 209 (Ohio Ct. App. 1994)) (holding that post-conviction relief is not available by virtue of the doctrine of *res judicata* to address constitutional claims that could have been raised on direct appeal from the conviction and sentence).  The Sixth Circuit has explicitly recognized *res judicata* as an adequate and independent basis for procedural default.  *Norris*, 146 F.3d at 332; *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994).  Because Paige could have raised this claim to the Supreme Court of Ohio, but did not, he waived the claim for federal habeas purposes "unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error."  *Rust*, 17 F.3d at 160.

Paige does not argue that cause and prejudice exist to excuse the procedural default.  Rather, he makes a conclusory assertion that he actually raised the claim in his appeal to the Supreme Court of Ohio.  In an attempt to support this assertion, Paige cites to a specific page number in the memorandum of jurisdiction filed with the Supreme Court of Ohio.  (Petitioner's Traverse, Doc. No. 10 at 3.)  Neither the cited page, nor any other portion of the memorandum of jurisdiction supports the assertion that Paige raised an ineffective assistance of counsel claim to the Supreme Court of Ohio.  Paige presented only one claim in that appeal, the claim he raises in Ground One of the Petition.  (See Doc. No. 8-12, Ex. 16.)

In a final effort to excuse his procedural default, Paige asserts, in a conclusory fashion, that he is actually innocent.  (Petitioner's Traverse, Doc. No. 10 at 14.)  The fundamental miscarriage of justice exception may be satisfied by submitting evidence showing that a constitutional violation has lead to the conviction of one who is actually innocent.  *Dretke v.*

*Haley*, 541 U.S. 386, 393 (2004).  Paige has submitted no evidence that he is actually innocent.

As Paige has not submitted evidence demonstrating actual innocence, and has failed to show cause and prejudice to excuse the procedural default of his ineffective assistance of counsel claim, the claim is procedurally barred.  Therefore, the Court should dismiss Ground Two.

### 2.  Ground Three: Improper Sentencing

Respondent asserts that Paige's third claim is procedurally defaulted because Paige never presented a claim challenging the constitutionality of his sentence to the Ohio courts.[1]

In his Petition, Paige attempts to establish cause by claiming that *Blakely v. Washington*, 542 U.S. 296 (2004), was not decided until after he filed an appeal to the Ohio Court of Appeals.  This assertion is false.  *Blakely* was decided June 24, 2004, eighteen days before Paige filed his brief with the Ohio Court of Appeals on July 12, 2004.  Paige could have presented his sentencing claim to the Ohio courts, but failed to do so.  The claim is now procedurally defaulted.

In his Traverse, Paige asserts that he did raise a sentencing claim in the state courts of Ohio and attempts to support the assertion merely by citing a page number in his brief filed in the Ohio Court of Appeals.  (Petitioner's Traverse, Doc. No. 10 at 3.)  This Court finds nothing on the cited page, nor in any other portion of his brief to the Ohio Court of Appeals or in his memorandum of jurisdiction to the Supreme Court of Ohio suggesting that he raised a sentencing claim to the Ohio courts.

---

[1] As an additional basis for dismissing Ground Two, Respondent asserts that Ground Two is based solely on state-law and is therefore, non-cognizable on federal habeas review.  The Court need not reach this issue because the claim is clearly procedurally defaulted.

9

Finally, Paige cites a recent decision of the Supreme Court of Ohio, *State v. Foster*, 845 N.E.2d 470 (Ohio 2006), holding that certain sections of Ohio's sentencing statutes, pursuant to which Paige was sentenced, violate the Sixth and Fourteenth Amendments under *Blakely v. Washington*, 542 U.S. 296 (2004). Although the Supreme Court of Ohio based its decision on the United States Supreme Court's decision in *Blakely*, the holdings of a state supreme court do not qualify as "clearly established federal law" for purposes of habeas review. See *Williams*, 529 U.S. at 412. Moreover, the Ohio Supreme Court held that its holding in *Foster* applied "to all cases on direct review." *Id*. at 499 (citing *United States v. Booker*, 543 U.S. 220, 268 (2005) ("A new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review or not yet final.")). As Paige's case was no longer on direct review at the time *Foster* was decided, *Foster* is inapplicable to his claim.

As Paige has not shown cause and prejudice to excuse the procedural default of his sentencing claim, Ground Three should be dismissed.

### B.  Ground One

Paige asserts that the trial court's admission of evidence of decades-old uncharged sexual misconduct violated his right to due process of law because it rendered his trial fundamentally unfair. In support of this claim, Paige argues that the evidence was inadmissible under Ohio law and resulted in unfair prejudice.

Ohio Rule of Evidence 404(B), like Federal Rule of Evidence 404(b), codifies the common-law rule that evidence of a defendant's prior bad acts is inadmissible to demonstrate a defendant's propensity to commit criminal acts, but may be admissible for other limited purposes. Ohio Rule of Evidence 404(B) states:

10

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The common-law rule against propensity evidence dates back to seventeenth century English cases.  *See* Harrison's Trial, 12 How. St. Tr. 834, 864 (Old Bailey 1692);  Hampden's Trial, 9 How. St. Tr. 1053, 1103 (K.B. 1684).  It was enforced by colonial courts and recognized as a well-established principle of Anglo-American jurisprudence by the end of the nineteenth century.  See *Boyd v. United States*, 142 U.S. 450, 458 (1892);  *People v. Molineux*, 61 N.E. 286, 293-94 (N.Y. 1901) ("[The rule against propensity evidence], so universally recognized and so firmly established in all English-speaking lands, is rooted in that jealous regard for the liberty of the individual which has distinguished our jurisprudence from all others, at least from the birth of the Magna Carta.").  The Supreme Court has clearly expressed the policy rationale underlying the rule:

> Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt . . . The state may not show a defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime.  The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.  The overriding policy of excluding such evidence, despite its admitted probative value, is the experience that its disallowance tends to prevent confusion of the issues, unfair surprise and unfair prejudice."

*Old Chief v. United States*, 519 U.S. 172, 181 (1997) (quoting *Michelson v. United States*, 335 U.S. 469, 475-76 (1948)).

Even under the common-law, however, evidence of a defendant's prior bad acts was

11

admissible in limited circumstances for the purpose of proving other matters such as intent, identity, malice, motive, a system of criminal activity, or an element of the crime.  *See Spencer v. Texas*, 385 U.S. 554, 560-61 (1967).  Under Ohio Rule of Evidence 404(B), prior bad acts evidence is admissible to prove other matters such as absence of mistake, identity, and intent, but only if those matters are actually in dispute.  *State v. Curry*, 43 N.E.2d 66, 66, paragraph 1 of Syllabus (Ohio 1975).  Paige argues that the trial court's admission of the prior acts evidence to prove a "pattern of conduct" was erroneous because neither Paige's identity, nor any other issue that could have properly been proven by such evidence, was actually in dispute.  He argues the evidence was admitted to prove that he committed the uncharged prior bad acts, that because he committed those acts, he was a horrible person who had a propensity to commit the crimes with which he was charged, and that therefore he was guilty.  In short, Paige argues, the state court admitted impermissible propensity evidence in the form of prior bad acts evidence, and the risk of unfair prejudice was so great that it denied him a fundamentally fair trial.

The record reveals that a substantial amount of uncharged misconduct evidence was admitted at Paige's trial.  The state moved to admit testimony by three of Paige's adult daughters that he sexually abused them and gave them venereal diseases when they were children, approximately 15-25 years prior to the acts alleged in the indictment.  The trial court held two *in camera* hearings before ruling that the testimony of the daughters was admissible under Rule 404(B).[2]  (Tr. at 318-36; 453-64.)  The court found the acts relevant because the following

---

[2]At the first hearing, two of Paige's daughters testified.  Although the trial court ruled the testimony of both of those daughters was admissible, only one of them, Malinda Dobbins (the victim's mother) actually testified before the jury.  At the second hearing, the trial court heard the testimony of a third daughter, Marcella Forbes McKelvey (the victim's aunt) before allowing her to testify regarding the other acts.

characteristics were similar to the crimes charged in the indictment: 1) the acts were perpetrated on young female family members; 2) the acts occurred in Paige's home; and 3) Paige rewarded the daughters with gifts after he molested them.  (Tr. at 327.)   It also ruled that the acts were "not too removed or distant in method from this case to lack any probative value."  (*Id*.)

Malinda Dobbins, Paige's adult daughter and the mother of the victim, testified as follows.  At the time of her testimony in 2004, she was thirty-two years old.  (Tr. at 371.)  For approximately ten years, starting from when she was either five or six years old and continuing until she was fourteen or fifteen, Paige had sex with her two or three times per week in their family home.  During the night, Paige would enter the bedroom she shared with her sisters, wake her up, and take her into another room to engage in sexual intercourse and other sexual acts with her.  Paige would buy her small gifts as a reward for engaging in sexual activity.  (*Id*. at 373-75.)  In 1986, Paige gave her a "sexually transmitted disease."  (Id. at 383-84.)  Dobbins was not asked and did not specify exactly which sexually transmitted disease she contracted.

On cross-examination, Malinda Dobbins further testified as follows.  In 1986, she and her mother reported the sexual abuse to the police and to a social worker, but no charges were ever brought against Paige.  She did not know why her father was never charged.  Despite the fact that Paige sexually abused her for nine years as a child, she never told her daughter, the victim, what Paige had done to her as a child.  She allowed her daughter to spend weekends at Paige's house on a regular basis because she thought he had changed.

Marcella Forbes McKelvey, Paige's daughter and the victim's aunt, testified as follows.  At the time of her testimony she was thirty-three years old.  (Tr. 465.)  Paige sexually abused her for approximately nine years, beginning when she was five years old until she was about

13

fourteen.  (*Id*. at 468-69.)  Paige would rub his penis on her and they would engage in oral sex and sexual intercourse.  She contracted anal warts when she was seven or eight years old, but was not sure how she contracted them.  (*Id* at 471-72.)  On cross-examination, McKelvey testified that the matter was not further brought to anyone's attention after she, along with her sister and mother, notified a detective of the abuse nineteen years ago.[3]  (*Id*. at 487.)

Paige testified in his own defense.  He denied having had any sexual contact with the victim and claimed that the allegations were completely fabricated.  Paige testified that he gave the victim a vaginal examination when she asked him to do so to determine whether there was something wrong with her, as she was experiencing unusual symptoms.  (*Id*. at 543, 560-61.)  He denied actually touching her at the time he examined her.  (*Id*. at 543.)  As to how the victim contracted trichomonas, Paige testified he did not know, but suggested that she probably contracted it from a boyfriend.[4]  (*Id*. at 570.)  A substantial portion of the state's cross-examination of Paige was focused on the daughters' accusations of sexual abuse that occurred fifteen to twenty-five years ago and their accusations that Paige gave them sexually transmitted diseases.[5]  (*Id*. 546-74.)  The state's closing and final arguments repeatedly referred to the alleged prior acts and Paige's "history of social diseases."  (*Id*. 644-54, 668-74).  At the close of

---

[3]A police detective testified that a police report was filed by Paige's wife and three daughters in 1987, but that the prosecutor did not believe there was sufficient evidence to pursue a case.  (*Id*. at 508-09.)

[4]The victim and her mother testified that the victim had never had a boyfriend.

[5]The state's cross-examination of Paige is set forth in twenty-eight pages of the transcript.  Of those twenty-eight pages, approximately eighteen reflect questioning focused on the other acts of sexual abuse alleged by the daughters, acts for which Paige was not indicted.

the evidence, the trial court gave the following limiting instructions:

> Evidence was received about the commission of acts other than the offenses for which the Defendant is charged in this case.  That evidence was received only for a limited purpose.  It was not received, and you may not consider it to prove the character of the Defendant in order to show that he acted in conformity or accordance with that character.
>
> If you find the evidence of other facts – other acts, excuse me, is true and the Defendant committed them, you may consider that evidence only for the limited purpose of deciding whether it proves the Defendant's pattern of conduct.  That evidence may not be considered for any other purpose.

(Tr. at 679-80.)

The Court of Appeals of Ohio affirmed the conviction, holding that "the trial court did not abuse its discretion in allowing testimony of other acts to demonstrate a pattern of sexual abuse."  (Doc. No. 8-11, Ohio Ct. App. Journal Entry and Opinion at 5.)   In reaching this conclusion, the court first noted that in one of its own unreported cases, it had "concluded that evidence regarding prior acts of molestation upon family members, even if not included in the indictment, was material in establishing a defendant's pattern of conduct."  (*Id*. at 4-5.) Applying its prior ruling to Paige's appeal, the court explained that the testimony of Paige's daughters was "used to demonstrate a pattern of sexual abuse with young female family members, each of whom contracted a sexually transmitted disease during the period of abuse [and] that Paige purchased gifts for the victims if they engaged in sexual conduct with him."  (*Id.* at 5.)  The court then concluded that "the probative value of the evidence was not substantially outweighed by the possibility of unfair prejudice."  (*Id*. at 5.)

The transcript of Paige's trial makes clear that the prosecutor made repeated references to the testimony of Paige's daughters and their allegations of uncharged prior sexual crimes and sexually transmitted diseases.  The evidence before the jury demonstrated that for approximately

ten years Paige engaged in repeated acts of incest and child molestation, and that he had at least

five different sexually transmitted diseases over the course of the past three decades.

Furthermore, there is no evidence that the sexually transmitted disease contracted by Paige's

daughters is the same disease that Paige's granddaughter contracted.  In fact, the evidence is to

the contrary.  Paige's granddaughter contracted trichomonas.  One of Paige's daughters

contracted anal warts and the other daughter contracted an unidentified sexually transmitted

disease.[6]  The probative value of this evidence is far from clear, but its impact on the jury and

the risk it posed for confusion of the issues is not.  That a very substantial portion of the trial was

dedicated to the presentation and development of this evidence can only have served to increase

the effect of the other acts evidence on the jury.

Moreover, the exception under which the court permitted the evidence – that it was

relevant to proving a "pattern of conduct" – appears to have questionable applicability to this

case.  Under Ohio law, "pattern evidence refers to other acts evidence that is admissible when

the defendant's scheme, plan, or system in doing an act is relevant at trial."  *State v. Schaim*, 600

N.E.2d 661, 671 (Ohio 1992).[7]  The Supreme Court of Ohio has held that scheme, plan, or

_____

[6]The other two diseases the prosecutor referred to were gonorrhea and "crabs."  On direct
examination, Paige testified that the only sexually transmitted disease he remembers
having was gonorrhea, which he had in the 1970s.  (Tr. 540-41.)  On cross-examination,
the prosecutor asked Paige whether he was "ever treated for crabs that [he] gave his
wife."  (Tr. 548-49.)  Paige denied having had crabs, and his wife did not testify.  The
prosecutor asked Paige whether he would agree that "its pretty rare that some person
would be accused of giving five social diseases to people?"  (Tr. 549.)  During the state's
final argument, the prosecutor characterized Paige as having "a history of social
diseases."  (Tr. 692.)

[7]Rule 404(B) does not use the phrase "scheme, plan or system."  That language is
contained in Ohio Rev. Code § 2945.59, which provides as follows:

16

system evidence is relevant in only two situations.  *State v. Broom*, 533 N.E.2d 682, 690 (1988) (citing *State v. Curry*, 330 N.E.2d 720, 725-726 (Ohio 1975)).  The first situation is when "the 'other acts' form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment."  *State v. Curry*, 330 N.E.2d 720, 725 (Ohio 1975).  The second situation is when the identity of the perpetrator is in issue.  *Id*. at 725-726.  When identity is in issue, the state may prove the defendant is the perpetrator by offering evidence that the defendant "committed similar crimes within a period of time reasonably near to the offense on trial, and that a similar scheme, plan, or system was utilized to commit both the offense at issue and the other crimes."  *State v. Eubank*, 398 N.E.2d 567, 569 (Ohio 1979).

The Supreme Court of Ohio has, at least implicitly, required that identity genuinely be at issue before other acts evidence showing a pattern of conduct or a common scheme, plan, or system may properly be admitted to prove identity.  In *Eubank*, the Supreme Court of Ohio held that testimony that the defendant committed similar sex crimes against other children "was not properly admitted to prove the defendant's scheme, plan or system in committing the crime

---

> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

Ohio courts read Rule 404(B) and § 2945.59 in conjunction with one another.  *See State v. Love*, No. C-960498, 1997 Ohio App. LEXIS 2378, at *11 (Ohio Ct. App. June 4, 1997) (citing *State v. Broom,* 533 N.E.2d 682, 689-90 (Ohio 1988)).

charged" because the state did not argue that the perpetrator's identity was at issue.  *Id*. at 569.

Similarly, in *Curry*, the Supreme Court of Ohio concluded that a trial court's admission of other

acts evidence in a statutory rape case was improper when the defendant did not deny being

present with the victim at the time of the alleged crime, but denied having sexual relations with

her.  *State v. Curry*, 330 N.E.2d at 726.  The court stated that the defendant's denial "did not

raise an identity question; it created, instead a factual dispute revolving around [the defendant's]

conduct with the victim."  *Id.*  Some Ohio appellate courts strictly construe these cases and hold

that other acts evidence demonstrating a common scheme, plan, or system is not admissible to

prove a defendant's identity unless the perpetrator's identity is genuinely at issue.  *See State v.

Miley*, No. 05CA14, 2006 Ohio App. LEXIS 4613, ¶74 (Ohio Ct. App. September 8, 2006)

(Fourth Appellate District); *State v. Wright*, No. 00CA39, 2001 Ohio App. LEXIS 5699, at \*26-

30 (Ohio Ct. App. December 6, 2001) (Fifth Appellate District).  Other Ohio appellate courts,

among them the Eighth Appellate District for Cuyahoga County, allow other acts evidence to

show a "pattern of conduct" or a common scheme, plan, or system, even when the identity of the

perpetrator does not appear to have been at issue, *i.e.* when the only issue was whether the

criminal acts occurred at all.[8]  *See State v. Cornell*, No. 59365, 1991 Ohio App. LEXIS 5664, at

---

[8]The Eighth Appellate District's liberal construction of Rule 404(B) is not unique.  In sex
crime cases in particular, state courts often contort Rule 404(B) to admit prior acts
evidence.  *See, e.g.*, *Lannan v. Indiana*, 600 N.E.2d 1334, 1336 (Indiana 1992);  *State v.
Lachterman*, 812 S.W.2d 759, 768 (Missouri Ct. App. 1991).  *See also* Thomas J. Reed,
*Reading Gaol Revisited: Admission of Uncharged Misconduct Evidence In Sex Offender
Cases*, 21 Am. J. Crim. L. 127, 199-209 (noting that in states without either a common-
law "lustful disposition exception" to the ban on propensity evidence or a statutory
equivalent, courts often stretch Rule 404(B) to admit evidence of uncharged sexual
misconduct when none of the matters enumerated in Rule 404(B) are genuinely in issue).

*18-20 (Ohio Ct. App. November 27, 1991) (Eighth Appellate District); *State v. Ervin*, No. 80473, 2002 Ohio App. LEXIS 4235, at *46-52 (Ohio Ct. App. August 8, 2002) (Eighth Appellate District) (holding testimony of two of defendant's adult relatives that he molested them as children, thirteen to eighteen years prior to the trial, was properly admitted as pattern evidence).

      The other acts evidence in Paige's case clearly was not offered to show the immediate background of the indicted crimes, as the other acts occurred approximately two decades before the crimes for which Paige was indicted.  That leaves the possibility that the evidence was relevant to proving Paige's identity as the perpetrator.  However, Paige's case was not one in which the identity of the perpetrator was genuinely at issue.  The victim testified that Paige, her grandfather, engaged in sexual acts with her over a period of several years.  Paige denied that any sexual abuse took place; he did not raise a defense of mistaken identity.  On cross-examination, when asked how his granddaughter contracted trichomonas, Paige claimed that a boyfriend must have given it to her.  This testimony was the only basis on which the state might have argued that identity was a material issue in the case.  However, the state did not make such an argument, as Paige's defense was that the dozens of acts alleged in the indictment never occurred, not that they occurred but were committed by someone else.

      Nonetheless, under the Eighth Appellate District's precedent, the testimony of Paige's daughters was admissible as "pattern of conduct" evidence.  Although that precedent appears to conflict with the holdings of the Supreme Court of Ohio, that is of no avail to a petitioner on habeas review.  It is well established that federal habeas courts may not provide relief for errors of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

19

Paige also claims that the admission of other acts evidence violated his right to a fundamentally fair trial under the Due Process Clause. Under AEDPA, the limited issue on habeas review is whether the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. In this case, according to Sixth Circuit precedent to which this Court is bound, the state court's admission of other acts evidence cannot be deemed contrary to clearly established federal law.

It is well settled that state court evidentiary rulings may violate due process when they render a trial fundamentally unfair. *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996); *Dowling v. United States*, 493 U.S. 342, 352 (1989); *Patterson v. New York*, 432 U.S. 197, 201-02 (1977). The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly," *Dowling*, 493 U.S. at 352. It has set forth a test for determining when evidentiary rulings render a trial fundamentally unfair: State court evidentiary rulings violate due process if they "offend some principle of justice so deeply rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Egelhoff*, 518 U.S. at 43).

The guide for determining whether a given principle alleged to have been violated is fundamental is historical practice. *Egelhoff*, 518 U.S. at 41-44; *In re Winship*, 397 U.S. 358, 361 (1970). Despite this well-established principle of constitutional law, the Sixth Circuit has held that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *accord Alberni v. McDaniel* 458 F.3d 860, 867 (9th Cir. 2006). In *Bugh*, one of the grounds on which the petitioner sought habeas relief was that the

state court's admission of evidence concerning similar, uncharged acts of child molestation

violated his right to due process. The Sixth Circuit based its holding that there was no clearly

established federal law that the state court's evidentiary ruling could be deemed "contrary to" on

footnote five of the Supreme Court's opinion in *Estelle v. McGuire*, 502 U.S. 62, 75 n.5 (1991).

In *Estelle*, the Supreme Court expressly declined to rule on the issue of "whether a state law

would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show

propensity to commit a charged crime." *Estelle v. McGuire*, 502 U.S. 62, 75 n.5 (1991).[9] The

Sixth Circuit reasons that because the Supreme Court has left the issue open, federal habeas

courts cannot find that state court rulings allowing propensity use of other acts evidence are

contrary to, or involve an objectively unreasonable application of, clearly established federal

law.

As the Court is bound by Sixth Circuit precedent, the Court should dismiss Ground One.

Because Paige has not demonstrated that the state court proceedings were contrary to, or

involved an unreasonable application of, clearly established federal law on Ground One and has

procedurally defaulted Grounds Two and Three, habeas relief is not warranted in this case.

### IV. Conclusion

For the foregoing reasons, the Magistrate Judge recommends the Petition be DENIED.

/s/ *Nancy A. Vecchiarelli*
Nancy A. Vecchiarelli
United States Magistrate Judge

Date: April 4, 2007

_____

[9]Since *Estelle*, the Supreme Court has denied *certiorari* on this issue several times. *See Alberni*, 458 F.3d 860, 866 n.1 (9th Cir. 2006).

21

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of this notice.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).